UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> And <br><br> THE STATE OF IOWA, <br><br> And <br><br> THE COUNTY OF LINN, IOWA <br><br> Plaintiffs, <br><br> SIERRA CLUB, <br><br> Plaintiff-Intervenor <br><br> v. <br><br> INTERSTATE POWER AND LIGHT COMPANY, <br><br> Defendant. | **INTERVENOR SIERRA CLUB'S [PROPOSED] COMPLAINT IN INTERVENTION** <br><br> Civil Action No. 15-0061 |

The Sierra Club, by and through the undersigned attorneys, alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action pursuant to 42 U.S.C. § 7413(b), 7477, 7604(a) of the Clean Air Act against Interstate Power and Light Company ("IPL" or "Defendant") for injunctive relief and civil penalties as a result of violations of the Prevention of

Significant Deterioration provisions of the Clean Air act, 42 U.S.C. § 7470-7492, and the federally approved Iowa State Implementation Plan.

2. Defendant modified, and thereafter operated, certain coal-fired electric generating units in Iowa without obtaining proper permits and without installing and employing the best available control technology ("BACT") to control emissions of sulfur dioxide ("$SO_2$") and/or nitrogen oxide ("$NO_x$"), as required by the CAA and applicable regulations.

3. Defendant's operation of these units has resulted in large amounts of $SO_2$, $NO_x$, and particulate matter pollution each year that have been, and still are being, released into the atmosphere.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and pursuant to 42 U.S.C. §§ 7413, 7477, and 7604. Sierra Club has a statutory right to intervene in this action pursuant to 42 U.S.C. § 7604(b)(1)(B), which provides that where the United States (on behalf of the Environmental Protection Agency ("EPA")) or a State has filed a civil action in a court of the United States to enforce the Clean Air Act "any person may intervene as a matter of right."

5. Venue is proper in this District pursuant to Sections 113(b) and 304(c) of the Act, 42 U.S.C. §§ 7413(b) and 7604(c), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because some of the violations that are the subject of this Complaint occurred and are occurring within this District, and Defendant resides in this District.

## NOTICES

6.     To the extent any notice is required, the United States, as the original plaintiff in this action, provided the requisite notice pursuant to 42 U.S.C. § 7413, through a notice of violation provided to Defendant more than thirty days prior to the commencement of this case and by notifying the State of Iowa.

## THE PARTIES

7.     Defendant Interstate Power and Light Company is incorporated in Iowa with headquarters in Cedar Rapids, Iowa. It is the operator and the owner or co-owner of a number of electric generating plants in Iowa, including the Lansing Generating Station in Allamakee County, Iowa, and the Ottumwa Generating Station in Wapello County, Iowa.

8.     As a corporate entity, Defendant is a "person" within the meaning of 42 U.S.C. § 7602(e).

9.     The Sierra Club has been working to protect communities, wild places, and the planet since 1892. With 2.1 million members and supporters throughout the United States, including in Iowa, the Sierra Club is the nation's largest and most influential grassroots environmental organization. The Sierra Club is dedicated to the protection and preservation of the natural and human environment and has identified Defendants' coal-fired power plants as major sources of air and water pollution in the state of Iowa.

## STATUTORY AND REGULATORY BACKGROUND

10. The Clean Air Act was enacted to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the CAA, 42 U.S.C. § 7401(b)(1).

11. The Clean Air Act requires the EPA Administrator to set primary and secondary national ambient air quality standards ("NAAQS") for air pollutants ("criteria pollutants") for which air quality criteria are issued pursuant to 42 U.S.C. § 7408. 42 U.S.C. § 7409. The primary NAAQS are set to be adequate to protect the public health with an adequate margin of safety, and the secondary NAAQS are set to be adequate to protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

12. Once NAAQS are set by EPA, each state must designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is termed an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area. An area that cannot be classified due to insufficient data is "unclassifiable." 42 U.S.C. § 7407(d). At all times relevant to the violations alleged in this action, Defendant's Lansing and Ottumwa Generating Stations were located in areas that had been designated as being in attainment with the NAAQS for $NO_x$ and $SO_2$.

13. Pursuant to 42 U.S.C. § 7410, each State must adopt and submit an implementation plan that provides for the attainment, maintenance, and enforcement of

the NAAQS. A SIP is enforceable by the respective state in which it is adopted, by the United States pursuant to 42 U.S.C. § 7413(b), and by citizens pursuant to 42 U.S.C. § 7604.

14. 42 U.S.C. § 7410(a)(2)(C) requires the state implementation plan to include, *inter alia*, a permit program to regulate the modification and construction of any stationary source of air pollution as necessary to assure the NAAQS are achieved and maintained.

15. Part C of Title I of the Clean Air Act, 42 U.S.C. §§ 7470-7492, contains requirements for the prevention of significant deterioration of air quality in those areas designated as either in attainment or unclassifiable for purposes of meeting the NAAQS, such as Allamakee and Wapello counties, where the Lansing and Ottumwa Generating Stations are located. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after adequate opportunities for public participation in the decision making process. These Prevention of Significant Deterioration provisions are referred to as the "PSD" program, which is part of the overall New Source Review ("NSR") program. The NSR program also includes requirements for areas designated as being in nonattainment with the NAAQS standards, known as the Nonattainment NSR program, which is set forth at Part D of the Title I of the Act, 42 U.S.C. §§ 7501-7515.

16. As part of the PSD program, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an area designated as attainment or unclassifiable unless a permit has been issued that comports with the requirements of 42 U.S.C. § 7475, including that the facility is subject to BACT[1] for each pollutant subject to regulation under the Act that is emitted from the facility. Defendants power plants are major sources of air pollution because they are fossil fuel fired steam electric plants of more than two hundred and fifty million British thermal units ("BTUs") per hour heat input and that emit or have the potential to emit one hundred tons per year or more of any regulated pollutant to be "major emitting facilities. 42 U.S.C. § 7479(1).

17. 42 U.S.C. § 7575(a)(3) prohibits issuance of a PSD permit unless "the owner or operator of such facility demonstrates, as required pursuant to section 7410(j) of this title, that emissions from construction or operation of such facility" will not compromise compliance with applicable air quality standards.

18. The Clean Air Act defines "construction" to include "modification" (as defined in 42 U.S.C. § 7411(a)). 42 U.S.C. § 7479(2)(C). "Modification" is defined as "any physical change in, or change in the method of operation of, a stationary source

---

[1] BACT is "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which results from any major emitting facility which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines if it is achievable for such facility . . . ." 42 U.S.C. § 7479(3).

which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

19.     Each state's implementation plan must include a regulatory PSD program. 42 U.S.C. § 7471. A state may comply with this requirement by having its own PSD regulations approved by EPA, which must be at least as stringent as EPA regulations set forth at 40 C.F.R. § 51.166. Upon EPA approval, state PSD requirements are federally enforceable under Section 113 of the CAA, 42 U.S.C. §§ 7413(a), (b); 40 C.F.R. § 52.23.

20.     The State of Iowa administers an approved PSD program, which is governed by its PSD rules at IOWA ADMIN. CODE r. 567-33. The Iowa PSD regulations adopted EPA's PSD rules found at 40 C.F.R. § 52.21 by reference and were originally approved by EPA on June 26, 1987. *See* 52 Fed. Reg. 23,981. Iowa's EPA-approved PSD regulations are currently codified at IOWA ADMIN. CODE r. 567-33. *See* 72 Fed. Reg. 27,056 (May 14, 2007).

21.     Applicable provisions in the PSD regulations in the Iowa implementation plan have at all relevant times prohibited construction of a "major modification" without, among other things, obtaining a PSD permit, undergoing a BACT determination, and applying BACT pursuant to such determination for each relevant pollutant. IOWA ADMIN. CODE r. 567-33.3(2). The definitions contained in the PSD regulations have at all relevant times defined "major modification" to include "any physical change in or change in the method of operation" of a major stationary source that would result in a significant net emissions increase of a regulated pollutant. IOWA

ADMIN. CODE r. 567-33.3(1); 40 C.F.R. § 52.21(b)(2)(i). "Significant" means a rate of emissions that would equal or exceed any of the following rates for the following pollutants: $NO_x$, 40 tons per year; $SO_2$, 40 tons per year. IOWA ADMIN. CODE r. 567-33.3(1); 40 C.F.R. § 52.21(b)(23)(i). Effective July 15, 2008, a "significant" increase in $SO_2$ is also regulated as a precursor to fine particulate matter ("$PM_{2.5}$"). *See* 73 Fed. Reg. 28,321, 28, 327, 28,333-34 (May 16, 2008).

## ENFORCEMENT PROVISIONS

22. The Clean Air Act provides that the Administrator may bring a civil action whenever, on the basis of any information available, the Administrator finds that any person has violated or is in violation of any other requirement or prohibition of, *inter alia*, the PSD program or any rule or permit issued thereunder; or the provisions of any approved SIP or any permit issued thereunder. 42 U.S.C. § 7413(a)(1) and (3).

23. The Clean Air Act authorizes EPA to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each violation occurring on or after January 31, 1997; $32,500 per day for each violation occurring after March 15, 2004; and $37,500 per day for each violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, among other things, the requirements or prohibitions described in the preceding paragraph. 42 U.S.C. § 7413(b).

24. Separately and in addition, the Clean Air Act authorizes EPA to initiate an action for injunctive relief as necessary to prevent the construction, modification, or operation of a major emitting facility which does not conform to the PSD requirements in Part C of Title I of the Act. 42 U.S.C. § 7477

25. The Clean Air Act also provides a "citizen suit" provision in 42 U.S.C. § 7604, which authorizes any person to commence a civil action for a violation of an emission standard or limitation. Sierra Club is a "person" within the meaning of this provision. 42 U.S.C. § 7602(e).

26. 40 C.F.R. § 52.23 provides, among other things, that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to 42 U.S.C. § 7413.

27. Pursuant to 42 U.S.C. § 7604, Sierra Club may seek injunctive relief and civil penalties for violations of the Iowa state implementation plan.

## GENERAL ALLEGATIONS

28. At all times relevant to this Complaint, Defendant has been the operator and owner or co-owner of the Lansing and Ottumwa Generating Stations.

29. At all times pertinent to this civil action, the Lansing and Ottumwa Generating Stations have been "major emitting facilities" and "major stationary sources" within the meaning of the Clean Air Act and the PSD regulations for $SO_2$ and $NO_x$.

## FIRST CLAIM FOR RELIEF – PSD VIOLATIONS

30. Paragraphs 1 – 29 are realleged and incorporated herein by reference.

31. Defendant commenced construction of one or more major modifications, as defined in the Clean Air Act and Iowa implementation plan regulations, at the Lansing and Ottumwa Generating Stations. Such major modifications included one or more physical changes or changes in the method of operation, including, but not necessarily limited to (1) the replacement of the superheater pendant and primary air ductwork, installation of a superheater sootblower, and repairs to the water wall at Lansing Unit 4, in 2009; and (2) repairs to the superheater and reheater components at Ottumwa Unit 1, in 2006. Such modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, of $NO_x$ and/or $SO_2$.

32. Defendant did not comply with the PSD requirements in the Clean Air Act and the Iowa state implementation plan with respect to the units it modified. Among other things, Defendant failed to obtain PSD permits for the construction and operation of the modified units. Defendant did not undergo a BACT determination, and failed to install and operate the best available control technology for the control of $NO_x$ and $SO_2$ pursuant to such determination, as required by the Clean Air Act and the Iowa state implementation plan.

33. Defendant has violated and continues to violate 42 U.S.C. § 7475(a) and the PSD provisions of the Iowa state implementation plan. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

34. As provided in 42 U.S.C. §§ 7413(b) and 7604, the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $32,500 for each day of violation occurring on or after March 15, 2004; and $37,500 for each day of violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

**PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations set forth above, Sierra Club requests that this Court:

1. Permanently enjoin Defendant from operating the Lansing and Ottumwa Generating Stations, and any other of its facilities that have been unlawfully modified, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2. Order Defendant to apply for permits that conform with the permitting requirements in effect at the time of the permitting action, for each pollutant in violation of the NSR requirements of the Clean Air Act;

3. Order Defendant to remedy its past violations by, among other things, requiring Defendant to install and operate BACT at its units, for each pollutant in violation of the PSD requirements of the Clean Air Act;

4. Order Defendant to achieve, maintain, and demonstrate compliance with the Clean Air Act and applicable requirements established thereunder, including the PSD provisions described above;

5. Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to the public health and the environment caused by the violations of the Clean Air Act and regulations alleged above;

6. Assess a civil penalty against Defendant of up to $32,500 per day for each violation of the Clean Air Act and applicable regulations occurring after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009;

7. Award Plaintiffs their costs of this action; and,

8. Grant other such relief as the Court deems just and proper.

Dated: July 15, 2015

Respectfully submitted,

For Plaintiff-Intervenor, Sierra Club,

MCGILLIVRAY WESTERBERG & BENDER LLC

/s/David C. Bender_____
David C. Bender
Wisconsin State Bar No. 1046102
(Pro Hac Vice pending)
211 S. Paterson Street, Ste 320
Madison, WI 53703
Telephone: (608) 310-3560
Facsimile: (608) 310-3561
bender@mwbattorneys.com

/s/ Wallace L. Taylor
Wallace L. Taylor
Iowa Bar No. AT0007714
118 3rd Ave. S.E., Suite 326
Cedar Rapids, Iowa 52401
Telephone: 319-366-2428

Facsimile: 319-366-3886
wtaylorlaw@aol.com